UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Allison B., <br><br> Plaintiff, <br><br> v. <br><br> Bluecross Blueshield of Illinois, and the Accenture LLP Medical Benefits Plan, <br><br> Defendants. | Case No. 24-cv-06162 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

Plaintiff Allison B., individually and on behalf of M.B., a minor, brought an Employee Retirement Income and Security Act ("ERISA") action for the recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) (2024) against Defendants BlueCross BlueShield of Illinois and the Accenture LLP Medical Benefits Plan alleging that Defendants wrongfully denied coverage for treatment M.B. received at Open Sky Wilderness Therapy and Maple Lake Academy. [41]. Plaintiff also alleges that Defendants violated the Mental Health Parity and Addiction Equity Act of 2008 under 29 U.S.C. § 1132(a)(3) for imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits. *Id.* Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), [43]. For the reasons explained below, this Court denies Defendants' motion.

I.  Amended Complaint's Allegations[1]

Plaintiff was a participant in the Accenture LLP Medical Benefits Plan ("the Plan"), and M.B. was a beneficiary of the Plan at all relevant times. [41] ¶ 3. M.B. received medical care and treatment at Open Sky Wilderness Therapy from June 20, 2022, through September 14, 2022, and Maple Lake Academy from September 19, 2022, through August 11, 2023. *Id.* ¶ 4. Open Sky and Maple Lake, licensed treatment facilities offering services in Utah, provided sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems. *Id.* ¶ 5. Specifically, Open Sky was licensed and accredited as an outdoor behavioral health program, and the state of Utah duly licensed Maple Lake to provide residential treatment services. *Id.* ¶¶ 40, 80. BlueCross BlueShield of Illinois ("BCBSIL") denied payment for M.B.'s medical expenses for the treatment received at both Open Sky and Maple Lake. *Id.* ¶ 6.

Specific to Open Sky, in a series of Explanation of Benefits statements, BCBSIL denied payment for M.B.'s treatment on the justification that, this service is "excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract." *Id.* ¶ 11. On June 9, 2023, Plaintiff appealed the denial, arguing that M.B.'s treatment was a covered benefit. *Id.* ¶ 12. The Plan provision entitled "Exclusions- What Is Not Covered" states that the following is not covered: "[b]ehavioral health services provided" at

---

[1] This Court takes the following facts from Plaintiff's Amended Complaint, [41].

2

"wilderness programs" except "for Covered Services provided by appropriate Providers as defined in the benefit booklet." *Id.* ¶ 13. The Plan defines "Provider" as "any health care facility (for example, a Hospital or Skilled Nursing Facility) or person (for example, a Physician or Dentist) or entity duly licensed to render Covered Services to you, and operating within the scope of such license." *Id.* ¶ 14.

Plaintiff contends that because an exception to the wilderness exclusion was made for appropriate providers, and since Open Sky was licensed and accredited, BCBSIL's denial was an error. *Id.* ¶ 15. The National Uniform Billing Committee has assigned wilderness programs, like Open Sky, their own separate revenue code under the 1006 revenue code for wilderness care and has determined the level of care of these programs to be comparable to residential treatment. *See id.* ¶¶ 16, 19. Although BCBSIL stated that Open Sky did not meet the definition of a residential treatment facility in their denial, they did not specify why coverage was unavailable under similar plan terms, such as provider or substance use disorder facility, neither of which contained an exclusion for wilderness services. *Id.* ¶ 20.

On October 12, 2023, BCBSIL sent Plaintiff another letter stating, "member's benefit book does not cover wilderness programs as part of the residential treatment center benefits. This service is excluded from coverage." *Id.* ¶ 23. On November 2, 2023, Plaintiff filed a level two appeal reiterating that Open Sky was not an excluded service, BCBSIL had failed to meet its obligation to meaningfully respond to the arguments she raised and that the denial was a violation of the Mental Health Parity

3

and Addiction Equity Act of 2008 (the "Parity Act" or "MHPAEA"). *See id.* ¶¶ 24–27. On November 13, 2023, BCBSIL once again denied payment under the previously provided justifications. *Id.* ¶ 28.

After the time spent at Open Sky, on September 19, 2022, M.B. was admitted to Maple Lake for issues regarding suicidal ideation, depression, impulsivity, theft, anxiety, hopelessness, and hallucinations, as well as hypersexual, angry, and manic behaviors. *Id.* ¶ 29. In a letter dated September 30, 2022, BCBSIL denied payment for M.B.'s treatment, quoting the definition of a residential treatment center and stating, "Maple Lake Academy does not have 24hr Nursing Available at this location." *Id.* ¶¶ 30–31. Plaintiff responded, contending that she was entitled to a full and fair review of her denial, the denial was a violation of MHPAEA, and Maple Lake met the definition of "Provider" and should have been approved on that basis alone. *Id.* ¶¶ 33, 36, 37.

On August 4, 2023, and October 28, 2023, BCBSIL upheld the denial of payment in letters stating once again the treatment at Maple Lake was not a covered benefit and although Maple Lake met the definition of "Provider" it did not meet the minimum BCBSIL requirements of a residential treatment center due to the lack of 24-hour nursing staff. *Id.* ¶¶ 41–42. Plaintiff exhausted her pre-litigation appeal obligations under the terms of the Plan and ERISA. *Id.* ¶ 43.

Plaintiff then filed this lawsuit on February 22, 2024. [1]. Defendants BCBSIL and the Plan moved to dismiss, [36], and this Court gave Plaintiff the opportunity to

4

amend her complaint in response; her counsel did so. [41]. Defendants now jointly move to dismiss Plaintiff's claims in its entirety. [43]. Plaintiff responded to the motion, [48], and Defendants filed a reply brief in support of their motion. [50].

## II. Legal Standard

To survive a 12(b)(6) motion, a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so that the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief, allowing this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556, 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action" and mere conclusory statements "do not suffice." *Id.*

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled facts as true and draws all reasonable inferences in the plaintiff's favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). But a court does not accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### III. Analysis

In her amended complaint, Plaintiff alleges ERISA and Parity Act violations. *See generally* [41] ¶¶ 46–103. Defendants BCBSIL and the Plan jointly move to dismiss all Plaintiff's claims against them. [43]. To this end, Defendants submitted exhibits for the Court's consideration, including the complete Medical Benefits Plan, a benefit denial letter to Plaintiff from BCBSIL, and a document from the American Academy of Child & Adolescent Psychiatry discussing the principles of care for treatment of children and adolescents with mental illness in residential treatment centers. *See generally* [44] Ex. 2–4.

At the motion to dismiss stage, courts can consider outside documents mentioned in a complaint that are central to the plaintiff's claim. *Jafri v. Chandler LLC*, 970 F.Supp.2d 852, 855 (N.D. Ill. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)); *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (finding the basis for this rule in Federal Rule of Civil Procedure Rule 10(c)). This incorporation-by-reference doctrine "provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court" while remaining within the framework of a 12(b)(6) motion. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Here, all the documents Defendants attach are mentioned in Plaintiff's amended complaint and are central to one of her claims.[2] So, the Court may consider them as well.

---

[2] The applicable benefits plan and benefit denial letter, both mentioned throughout Plaintiff's amended complaint, form the basis for her ERISA and Parity Act violations. *See* [41] ¶¶ 57–61. Further, Plaintiff

6

For the reasons discussed below, this Court denies Defendants' motion to dismiss.

### A. Maple Lake Claims

#### 1. Parity Act Violations (Count II)

Plaintiff's recovery of benefits claims (Count I) hinges, in part, on her Parity Act claim (Count II), so the Court will address Count II first.

The Parity Act requires that when a group health plan provides coverage for both medical benefits and mental health and substance abuse benefits, the Plan must ensure treatment limitations on mental health benefits are "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan." 29 U.S.C. § 1185a(a)(3)(A)(ii). Treatment limitations include both "quantitative and "nonquantitative" limitations. 29 C.F.R. § 2590.712(a) (2024). The Parity Act implementing regulations do not provide a comprehensive definition of "nonquantitative" limitations, but include illustrative examples, such as restrictions based on "geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." *See, e.g.,* 29 C.F.R. § 2590.712(c)(4)(ii)(H).

---

represented in her amended complaint that "[g]enerally accepted standards of medical practice and care are largely codified and enforced by appropriate licensing, regulatory, and accreditation entities. For example, the American Academy of Child and Adolescent Psychiatry promulgates accreditation standards that federal courts have previously found to reflect the generally accepted standards of medical practice and care for residential mental health treatment facilities providing mental health treatment to children or adolescents." [41] ¶ 72. Plaintiff's second theory of Parity Act violation relies upon a general accepted standard of care argument, so this document too is referenced and central to one of Plaintiff's claims.

When evaluating Parity Act violations, the statute requires analysis of nonquantitative treatment limitations ("NQTLs") on benefits within the same category. 29 C.F.R. § 2590.712-1(b); Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, 78 Fed. Reg. 68240, 68247 (Nov. 13, 2013). The pertinent category here is "intermediate services" (*i.e.,* services that fall between inpatient hospitalization and outpatient care). *See, e.g.*, 78 Fed. Reg. at 68246. The commentary to the regulations specifically identifies Skilled Nursing Facilities ("SNFs") as treatment analogues to residential treatment centers ("RTCs") under the NQTL rules. *Id.* at 68247.

In this case, Plaintiff's Parity Act claim rests upon two theories: (1) the Plan's requirement that RTCs have 24-hour onsite nursing is more restrictive than the criteria the Plan applies to analogous intermediate levels of medical/surgical services; and (2) requiring RTCs to have 24-hour onsite nursing as a prerequisite to coverage imposes a requirement that is above the generally accepted standard of care ("GASC") for RTCs when the Plan does not impose requirements above the GASC for analogous intermediate levels of medical/surgical services. [41] ¶¶ 68, 102. Plaintiff's first theory is dispositive and was sufficiently pled to survive Defendants' motion to dismiss.

Although the Seventh Circuit has not yet squarely addressed the issue, other courts have developed a four-part test to identify requirements for stating a Parity Act claim. A Plaintiff must: (1) plausibly allege that the relevant plan is subject to

8

MHPAEA; (2) identify a specific treatment limitation on mental health or substance-use disorder benefits covered by the plan; (3) identify medical or surgical care covered by the plan that is analogous to the mental health or substance-use disorder care for which Plaintiff seeks benefits; and (4) plausibly allege a disparity between the treatment limitation on mental health or substance-use disorder benefits as compared to the limitations imposed upon the medical or surgical analog. *See e.g., E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1283 (10th Cir. 2023). Here, Defendants only contest the fourth element.

Defendants argue that the Parity Act claim should be dismissed because Plaintiff has not shown there is a disparity between the Plan's RTC and SNF requirements, because both require 24-hour onsite nursing. [44] at 12. The Plan specifically enumerates that RTCs are subject to the 24-hour nursing requirement. *Id.* at 13. In contrast, the Plan only states that SNFs must be "*duly licensed* by the appropriate governmental authority to provide such services and operating within the scope of such license." *Id.* at 13 n.16. (emphasis added). On its face, the Plan does not impose the same 24-hour onsite nursing requirements for both facilities.

The applicable licensing regulations determine whether the Plan's requirements between RTCs and SNFs are in parity. To obtain licensure, Utah law requires that "nursing staff are present on the premises 24 hours a day to meet the needs of each resident" and that the SNF "shall provide 24-hour licensed nursing services." UTAH ADMIN. CODE r. 432-150-4(1)(b)–(c) (2025). Federal law provides that

9

"a skilled nursing facility must provide 24-hour licensed nursing service which is sufficient to meet nursing needs of its residents." 42 U.S.C. § 1395i-3(b)(4)(C)(i) (2024). Defendants cite similar cases where dismissal was granted based upon these state and federal regulations. *C.B. v. BlueCross BlueShield of Illinois*, No. 23-cv-01206, 2024 WL 1003687 (N.D. Ill. Jan. 9, 2024) (dismissing a Parity Act claim on the determinations that there was no disparity in the 24-hour nursing requirement as pled); *J.W. v. BlueCross BlueShield of Texas*, No. 1:21-cv-21, 2022 WL 2905657, at *6 (D. Utah July 22, 2022) (again dismissing a Parity Act claim on the determinations that there was no disparity in the 24-hour nursing requirement as pled).

In response, however, Plaintiff notes relevant exceptions to the applicable federal and state regulations, showing that SNFs are not always subject to the 24-hour onsite nursing requirements. [48] at 12–14. For example, if an SNF engages the services of a registered professional nurse for more than 40 hours a week, the Secretary of Health and Human Services can, after making certain findings, waive the 24-hour nursing requirement. 42 U.S.C. §1395i-3(b)(4)(C)(ii). Additionally, Utah law only requires that "nursing staff" be present, which includes nurse aids who are not licensed nurses. UTAH ADMIN. CODE r. 432-150-3(11).

Defendants respond that the federal exception Plaintiff identifies is "extremely narrow" and "unlikely to ever apply to a SNF." [50] at 12–13. The Plan, however, seemingly without exception, requires RTCs to provide 24-hour onsite nursing (while only requiring SNFs to be duly licensed).

10

In other words, the federal and state regulations and the Plan actually (not hypothetically) establish different restrictions. This statutory language, occasionally permitting SNFs to avoid the 24-hour onsite nursing requirement, coupled with the Plan's insistence on 24-hour onsite nursing for RTCs, may reveal a nonquantitative treatment limitation applied more stringently to RTCs than SNFs. Whether this fact establishes a treatment limitation more restrictive than the predominant treatment limitations (that apply to "substantially all" the medical and surgical benefits covered by the plan) is a question requiring a full record. *See also Brian W. v. Health Care Serv. Corp.*, No. 24-cv-2168, 2025 WL 306365, at *7 (N.D. Ill. Jan. 27, 2025); *Midthun-Hensen on behalf of K.H. v. Grp. Health Coop. of S. Cent. Wisc., Inc.*, 110 F.4th 984, 987–88 (7th Cir. 2024). At this stage in litigation, Plaintiff has plausibly stated a claim by alleging an apparent disparity in the application of treatment limitations under the Parity Act, and that, for now, permits her amended complaint to survive Defendants' motion to dismiss.

On the other hand, Plaintiff's second theory for why the Plan violates the Parity Act is not sufficient to survive Defendants' motion to dismiss. Plaintiff alleges that 24-hour onsite nursing is part of the GASC at SNFs, whereas when applying the same requirement to RTCs, this goes "above and beyond" the GASC, thus creating a disparity in the limitations applied to analogous treatment facilities in violation of the Parity Act. [41] ¶¶ 96–103.

11

The GASC for RTCs is set out in the American Academy of Child & Adolescent Psychiatry's ("AACAP") "Principles of Care for Treatment of Children and Adolescents with Mental Illnesses in Residential Treatment Centers." *See* [41] ¶ 72. The AACAP states that RTCs shall have "[a] registered nurse with at least one year experience in mental health services or a mental health worker . . . should provide 24 hour developmentally sensitive child supervision, leisure and supportive care." [44-4] at 3. Given that the AACAP contemplates 24-hour supervision, and the presence of a qualified registered nurse is one of the ways they recommend RTCs provide their services, the Plans' 24-hour onsite nursing requirement meets those standards. Thus, Plaintiff has not plausibly pled a Parity Act violation as to any disparity in treatment limitations the Plan imposes based on the GASC of analogous facilities.

Nevertheless, Plaintiff sufficiently pled her first theory regarding the disparity in the Plan's application of the 24-hour onsite nursing requirement between RTCs and SNFs, thus Count II survives Defendants' motion to dismiss.

### 2. Recovery of Benefits (Count I)

In Count I, Plaintiff alleges that Defendants wrongfully denied coverage of M.B.'s treatment at Maple Lake when relying upon the facility's failure to meet the 24-hour onsite nursing requirement because the requirement itself violates the Parity Act. *See* [41] ¶ 61. Plaintiff further alleges that Defendants may not have provided a full and fair review of her appeal and that even if Maple Lake did not meet

12

the Plan's definition of an RTC she is entitled to coverage separately under the Plan's definition of "Provider." *See id.* ¶¶ 36, 48–49.

If a provision of a contract violates a statute, that provision is void. *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 699 (7th Cir. 2008). Defendants based the denial of benefits on the fact that Maple Lake did not meet the definition of RTC and was thus not covered under the Plan. *See* [41] ¶ 60.

Because Plaintiff plausibly pled that the 24-hour onsite nursing requirement for RTCs is a Parity Act violation and because each of Defendants' arguments in favor of Count I's dismissal rest on the assumption that there is not a Parity Act violation, Count I survives Defendants' motion to dismiss.

### B. Open Sky Claims

#### 1. Parity Act Violations (Count II)

Once again, Plaintiff's recovery of benefits claims (Count I) hinges, in part, on her Parity Act claim (Count II), so the Court will address Count II first. The same Parity Act standards that applied to the analysis of Plaintiff's claims at Maple Lake apply here to Plaintiff's Open Sky claims.

Here, Plaintiff alleges two Parity Act theories: (1) Defendants violated the Parity Act when they denied coverage of M.B.'s treatment at Open Sky when they would not have denied coverage at analogous facilities that the National Uniform Billing Committee has assigned the "outdoor behavioral health program" revenue code; and (2) Defendants violated the Parity Act when they placed a wilderness

13

program exclusion on RTCs but not analogous treatment facilities resulting in more restrictive treatments limitations. [41] ¶¶ 82, 85, 87.

Plaintiff has not plausibly pled her first theory to allege a Parity Act violation. The second prong of the four-part test requires the Plaintiff to identify a specific treatment limitation placed on mental health or substance-use disorder benefits that the plan covers. *E.W.*, 86 F.4th at 1283. Here, the Plan makes no mention of providing coverage for outdoor behavioral health programs. Plaintiff has not identified any treatment limitation covered by the Plan. Therefore, the claim as to unequal denial of coverage based on the outdoor behavioral health revenue code does not survive the motion to dismiss.

As to Plaintiff's second theory, the wilderness excision, she has plausibly pled a Parity Act violation. Defendants rely on Open Sky being a wilderness program in their denial. [41] ¶ 87. Plaintiff points to the Plan's RTC definition that expressly excludes from coverage "wilderness programs" and the behavioral health services exclusions section, which also lists wilderness programs as an uncovered service. *Id.* ¶ 13, 23. Plaintiff further identifies that there is no such exclusion placed on analogous intermediate-level medical/surgical facilities. *Id.* ¶ 83. In doing so, Plaintiff has satisfied all four prongs of the test to state a valid Parity Act violation claim because: (1) It is stipulated that the Plan is subject to the Parity Act; (2) Plaintiff identified the wilderness exclusion as a limitation on mental health or substance-use disorder benefits covered by the plan; (3) Plaintiff has identified

14

analogous medical or surgical care covered by the Plan; and (4) Plaintiff has plausibly alleged a disparity between the treatment limitation on mental health benefits compared to the medical/surgical analogues such as SNFs. Thus, Plaintiff has plausibly alleged a Parity Act violation as to the wilderness program exclusion in the Plan.

### 2. Recovery of Benefits (Count I)

In Count I, Plaintiff alleges that Defendants wrongfully denied coverage of M.B.'s treatment at Open Sky when relying on the Plan's wilderness program exclusion because the exclusion itself violates the Parity Act. *See* [41] ¶¶ 57, 87. Again, if a provision of a contract violates a statute, that provision is void. *REI Transp., Inc.*, 519 F.3d at 699. Because Plaintiff has plausibly alleged that the wilderness exclusion violates the Parity Act and Defendants relied on the wilderness exclusion when denying coverage, Count I survives Defendants' motion to dismiss.

### IV. Conclusion

For the reasons set forth above, this Court denies Defendants' motion to dismiss, [43].

Dated: February 20, 2026                Entered:

                                                         John Robert Blakey
                                                         United States District Judge